**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **CECELIA RENA HILL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | Civil Action No. <u>**3:21-cv-00558**</u> |
| ) | |
| **VIRGINIA CREDIT UNION, INC.,** ) | |
| **SERVE:   Christopher M. Shockley, Reg. Agent** ) | |
| **7500 Boulders View Drive** ) | |
| **P.O. Box 90010** ) | |
| **Richmond, VA 23225** ) | |
| ) | |
| **Defendant.** ) | |

## <u>COMPLAINT</u>

COMES NOW the Plaintiff, CECELIA RENA HILL, by counsel, and for her complaint against the Defendant, VIRGINIA CREDIT UNION, INC., alleges as follows:

**I.**

### <u>PRELIMINARY STATEMENT</u>

1.      Defendant, VIRGINIA CREDIT UNION, INC., has violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a–x ("FCRA") by improperly furnishing to various consumer reporting agencies inaccurate and derogatory information regarding Plaintiff's credit card account, indicating with duplicate trade lines that the account was discharged in Plaintiff's bankruptcy case, and creating the misleading impression that there are more derogatory credit accounts on Plaintiff's credit than are actually attributable to Plaintiff. Despite receiving multiple disputes and correspondence from Plaintiff, Defendant continues to furnish this inaccurate and derogatory information, causing it to be reported on Plaintiff's credit.

2.      Defendant's violations include: failing to fully and properly investigate Plaintiff's credit reporting disputes, failing to review all relevant information provided by the consumer reporting agencies, and failing to modify, delete, or permanently block the reporting of inaccurate or incomplete information disputed by Plaintiff. Through these failures, and by improperly furnishing inaccurate information that was reported on Plaintiff's credit, Defendant has violated Plaintiff's rights under the FCRA. Accordingly, Plaintiff seeks actual damages, attorney's fees and costs, and punitive damages for Defendant's willful violations of the FCRA.

## II.

### JURISDICTION AND VENUE

3.      The jurisdiction of this Court is conferred by 15 U.S.C. §1681(p) and 28 U.S.C. §1331.

4.      Venue is proper in this Court pursuant to 28 U.S.C. §§1391(b)(1)-(2).

## III.

### PARTIES

5.      Plaintiff CECELIA RENA HILL ("Ms. Hill" or "Plaintiff") is a natural person and "consumer" as defined by § 1681a(c) of the FCRA. Ms. Hill resides in the City of Suffolk, Virginia, which falls within the Eastern District of Virginia.

6.      Defendant VIRGINIA CREDIT UNION, INC. ("VACU") is a corporation formed in the Commonwealth of Virginia. VACU also maintains its principal place of business and registered offices in Richmond, Virginia, which falls within the Richmond Division of the Eastern District of Virginia. VACU conducts business in the Commonwealth of Virginia, with consumers in Virginia.

7.      With respect to the accounts it reported on Plaintiff's credit, VACU is a "furnisher" as governed by the FCRA.

**IV.**

**FACTS**

A.      **Background**

8.      On or about June 9, 2014, Plaintiff opened a revolving line of credit account with VACU (the "VACU Line of Credit").

9.      On or about June 13, 2014, Plaintiff opened a revolving credit card account with VACU (the "VACU Credit Card").

10.      On or about October 20, 2015, Plaintiff entered into a loan agreement with VACU to finance the purchase of a 2011 Chevrolet Traverse (the "VACU Auto Loan").

11.      On December 31, 2018, Plaintiff filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code in the Eastern District of Virginia, Norfolk Division, Case No. 18-74549-SCS. Relief was ordered.

12.      At the time of her bankruptcy filing, Plaintiff owed three debts to VACU: the VACU Line of Credit, the VACU Credit Card, and the VACU Auto Loan.

13.      Amongst the debts included in her bankruptcy schedules filed with the bankruptcy court on December 31, 2018, Plaintiff listed the VACU Auto Loan in "Schedule D: Creditors Who Have Claims Secured by Property" and the VACU Credit Card in "Schedule E/F: Creditors Who Have Unsecured Claims." Plaintiff did not list any other debts owed to VACU in her bankruptcy schedules.

14.     On April 15, 2019, the bankruptcy court entered a Discharge of Debtor in Plaintiff's bankruptcy case, pursuant to 11 U.S.C. § 727 of the Bankruptcy Code (the "Discharge").

15.     On April 17, 2019, the Bankruptcy Noticing Center sent a copy of the Discharge to VACU via electronic transmission.

16.     The VACU Line of Credit, the VACU Credit Card, and the VACU Auto Loan (collectively, the "Three Discharged VACU Accounts") were each included in Plaintiff's Discharge. Other than those Three Discharged VACU Accounts, no other VACU accounts were discharged in Plaintiff's bankruptcy case, nor did Plaintiff have any other open accounts with VACU.

17.     After receiving her Discharge, Plaintiff hoped and believed her credit problems were behind her and that, based on her faithful completion of all of her obligations to obtain her Discharge, she would be allowed to receive a fresh start from her indebtedness and rebuild her credit.

18.     In or around August 2019, Plaintiff requested copies of her credit disclosures from three national consumer reporting agencies, Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union, LLC ("Trans Union"). Plaintiff subsequently received a credit disclosure from Equifax, dated August 21, 2019, and a credit disclosure from Experian, dated August 26, 2019, and she eventually obtained a credit disclosure from Trans Union, dated October 28, 2019 (collectively, the "2019 Disclosures").

**B.      Inaccurate and Derogatory Information Regarding VACU Accounts Reported on Plaintiff's Equifax Credit Reports.**

19.      The 2019 Disclosures revealed that Equifax was reporting inaccurate and derogatory information regarding Plaintiff's accounts with VACU.

20.      First, in addition to reporting Plaintiff's Three Discharged VACU Accounts, each with a status of "Account Included in Bankruptcy", Equifax was also reporting derogatory information in an additional separate trade line that referred to a fourth VACU account, identified as an unsecured loan account that was opened on the same date as the VACU Credit Card (June 13, 2014) (the "Additional VACU Account"). Even though the Additional VACU Account was not one of Plaintiff's Three Discharged VACU Accounts, it was being reported with an account status of "Account Included in Bankruptcy". Including the Additional VACU Account, Equifax was inaccurately reporting that Plaintiff had four separate VACU accounts discharged in her bankruptcy case.

21.      Equifax's reporting with respect to the Additional VACU Account was inaccurate because Plaintiff only had three accounts with VACU at the time of her bankruptcy filing, and she did not open any accounts with VACU thereafter, so it was not possible for a fourth VACU account to have been discharged in Plaintiff's bankruptcy. Even if the Additional VACU Account trade line was showing duplicate information for one of Plaintiff's Three Discharged VACU Accounts—which were all being reported with a status of "Account Included in Bankruptcy" elsewhere on Plaintiff's credit file—it was misleading and inaccurate to report differing and derogatory information about that one account under two separate trade lines.

22.      Second, in the trade lines that referenced partial account no. 534466000003, relating to either the VACU Credit Card or the Additional VACU Account, Equifax reported in

the Additional Information section that the account was affected merely by a "Bankruptcy Petition" instead of "Bankruptcy Discharged".

23.     Equifax's reporting was inaccurate and misleading because, if it related to the VACU Credit Card, reporting that the account was affected merely by a "bankruptcy petition" instead of "bankruptcy discharged" suggested that the account may not have been discharged in Plaintiff's bankruptcy, especially when the reporting was compared to the reporting of certain other discharged accounts on Plaintiff's credit report, which accurately reflected the bankruptcy status as "bankruptcy discharged". Alternatively, if that trade line referred to the Additional VACU Account, then it should not have included any reference to Plaintiff's bankruptcy at all because it was not one of Plaintiff's Three Discharged VACU Accounts.

24.     Third, in the trade line that referenced partial account no. 51996003, also relating to either the VACU Credit Card or the Additional VACU Account, Equifax was reporting a date of first delinquency in April 2019.

25.     Equifax's reporting was inaccurate because, if it related to the VACU Credit Card, which was discharged in Plaintiff's bankruptcy case, the date of first delinquency should not have been reported as having occurred on a date after the bankruptcy was filed. Alternatively, if that trade line referred to the Additional VACU Account, then it should not have included any reference to a delinquency at all because it was not one of Plaintiff's Three Discharged VACU Accounts.

26.     On December 16, 2019, Plaintiff sent Equifax a letter dated December 13, 2019 via certified mail, to dispute the inaccurate and derogatory information set forth in her credit file (the "First Equifax Dispute Letter").

27.     Plaintiff paid to the United States Postal Service the costs associated with mailing the First Equifax Dispute Letter via certified mail.

28.     In the First Equifax Dispute Letter, with respect to the trade line that referenced partial account no. 51996003, Plaintiff disputed the date of first delinquency being reported as occurring on a date after she filed her bankruptcy, and she requested that the inaccurate information be corrected or deleted.

29.     Plaintiff also disputed in the First Equifax Dispute Letter the inaccurate and derogatory information being reported in the trade line that referenced partial account no. 534466000003. Specifically, Plaintiff asserted that the comments indicating the account was merely affected by a "bankruptcy petition" should be corrected to make clear that the account was discharged.

30.     At the time she sent the First Equifax Dispute Letter, Plaintiff was under the mistaken impression that the Additional VACU Account trade line actually related to one of her Three Discharged VACU Accounts. Thus, Plaintiff did not assert in the First Equifax Dispute Letter that the Additional VACU Account was not one of her Three Discharged VACU Accounts.

31.     On December 20, 2019, Equifax received Plaintiff's First Equifax Dispute Letter.

32.     In response to the First Equifax Dispute Letter, Equifax mailed to Plaintiff its reinvestigation results, dated December 25, 2019.

33.     Equifax's December 25, 2019 reinvestigation results revealed that the inaccurate information that Plaintiff disputed with respect to the VACU accounts was not corrected. Specifically, with respect to the trade line that referenced partial account no. 51996003, the date of first delinquency was still being reported as having occurred after Plaintiff filed her

bankruptcy case. With respect to the trade line that referenced partial account no. 534466000003, the comment referencing "Bankruptcy Petition" was still being reported.

34.     In or around May 2020, Plaintiff obtained from Equifax an updated copy of her credit disclosure, dated May 7, 2020, which confirmed that none of the inaccurate information that Plaintiff disputed in her First Equifax Dispute Letter was corrected with respect to the VACU accounts. Instead, the inaccurate and derogatory information that Plaintiff disputed continued to be reported in the trade lines relating to those accounts.

35.     On June 19, 2020, Plaintiff sent Equifax a second letter, dated June 1, 2020, via certified mail to dispute again the inaccurate and derogatory information appearing in her credit file (the "Second Equifax Dispute Letter").

36.     Plaintiff paid to the United States Postal Service the costs associated with mailing the Second Equifax Dispute Letter via certified mail.

37.     In the Second Equifax Dispute Letter, Plaintiff disputed with Equifax the same inaccurate and derogatory information that she disputed in the First Equifax Dispute Letter regarding the VACU accounts. Specifically, with respect to the trade line that referenced partial account no. 51996003, Plaintiff again disputed the date of first delinquency being reported as occurring on a date after she filed bankruptcy. With respect to the trade line that referenced partial account no. 534466000003, Plaintiff again asserted that the comments indicating the account was merely affected by a "bankruptcy petition" should be corrected to make clear that the account was discharged. Plaintiff requested again that the inaccurate information being reporting about the disputed VACU accounts be corrected or deleted.

38.     Plaintiff did not assert in the Second Equifax Dispute Letter that the Additional VACU Account was not one of her Three Discharged VACU Accounts because she was still

under the mistaken impression that the Additional VACU Account trade line actually related to one of her Three Discharged VACU Accounts.

39.     Plaintiff enclosed with the Second Equifax Dispute Letter copies of the Discharge and her relevant bankruptcy schedules to demonstrate the creditors and accounts that were discharged in her bankruptcy.

40.     On June 25, 2020, Equifax received Plaintiff's Second Equifax Dispute Letter.

41.     In response to the Second Equifax Dispute Letter, Equifax mailed to Plaintiff its reinvestigation results, dated June 28, 2020.

42.     Equifax's June 28, 2020 reinvestigation results revealed that the inaccurate information that Plaintiff disputed with respect to the VACU accounts was not all corrected. Specifically, with respect to the trade line that referenced partial account no. 51996003, the date of first delinquency was still being reported as having occurred after Plaintiff filed her bankruptcy case. With respect to the trade line that referenced partial account no. 534466000003, although an additional comment referencing "Bankruptcy Discharged" was added to the trade line, the misleading "Bankruptcy Petition" comment was also still being reported.

43.     In or around August 2020, Plaintiff obtained from Equifax an updated copy of her credit disclosure, dated August 6, 2020, which revealed that the same inaccurate and derogatory information continued to be reported about both the VACU accounts. Furthermore, despite what Equifax had reported in its June 28, 2020 reinvestigation results, the August 5, 2020 Equifax disclosure confirmed that comments were still being reported in the trade line that referenced partial account no. 534466000003, indicating that the account was affected merely by a "Bankruptcy Petition" instead of "Bankruptcy Discharged".

44.     On August 20, 2020, Plaintiff sent Equifax a third letter, dated August 20, 2020, via certified mail to dispute again the inaccurate and derogatory information appearing in her credit file (the "Third Equifax Dispute Letter").

45.     Plaintiff paid to the United States Postal Service the costs associated with mailing the Third Equifax Dispute Letter via certified mail.

46.     In the Third Equifax Dispute Letter, Plaintiff again disputed the inaccurate and derogatory information that Equifax was reporting regarding the VACU accounts. Specifically, with respect to the trade line that referenced partial account no. 51996003, Plaintiff again disputed the date of first delinquency being reported as having occurred after Plaintiff filed her bankruptcy case. Additionally, because Plaintiff only had three accounts with VACU that were discharged in her bankruptcy case, she asserted in the Third Equifax Dispute Letter that there should not be four VACU accounts being reported on her credit as included or discharged in her bankruptcy, even suggesting that the VACU Credit Card trade line and the Additional VACU Account trade line both referenced the same account. Plaintiff requested that one of the VACU derogatory trade lines referencing that account be corrected or deleted from her credit file.

47.     Plaintiff enclosed with the Third Equifax Dispute Letter copies of the Discharge and her relevant bankruptcy schedules to demonstrate the VACU accounts she had at the time of the bankruptcy filing, and that only those VACU accounts were discharged in her bankruptcy.

48.     On August 31, 2020, Equifax received Plaintiff's Third Equifax Dispute Letter.

49.     In response to the Third Equifax Dispute Letter, Equifax mailed to Plaintiff its reinvestigation results, dated September 19, 2020.

50.     Equifax's September 19, 2020 reinvestigation results revealed that none of the inaccurate information that Plaintiff disputed was corrected with respect to the VACU accounts.

Instead, the trade line that referenced partial account no. 51996003 continued to indicate that the date of first delinquency occurred after Plaintiff filed her bankruptcy case, and Equifax continued to report on Plaintiff's credit four VACU accounts with a status of "Account Included in Bankruptcy".

51.     On October 30, 2020, Plaintiff sent Equifax a fourth letter, dated October 29, 2020, via certified mail, to dispute again the inaccurate and derogatory information appearing in her credit file (the "Fourth Equifax Dispute Letter").

52.     Plaintiff paid to the United States Postal Service the costs associated with mailing the Fourth Equifax Dispute Letter via certified mail.

53.     In the Fourth Equifax Dispute Letter, Plaintiff again disputed the inaccurate and derogatory information that Equifax was reporting regarding the VACU accounts. Specifically, with respect to the trade line that referenced partial account no. 51996003, Plaintiff again disputed the date of first delinquency being reported as having occurred after Plaintiff filed her bankruptcy case. Plaintiff also asserted again that she only had three accounts with VACU that were discharged in her bankruptcy case, and therefore, there should not be four VACU accounts being reported on her credit as included or discharged in her bankruptcy. Plaintiff also suggested again that the VACU Credit Card trade line and the Additional VACU Account trade line both referenced the same account. Plaintiff requested again that the information being reported about the disputed accounts be corrected or deleted.

54.     Plaintiff enclosed with the Fourth Equifax Dispute Letter copies of the relevant pages of an Equifax credit report, dated December 26, 2018—only five days prior to the filing of Plaintiff's bankruptcy petition—to demonstrate that only the Three Discharged VACU Accounts were open at the time of her bankruptcy filing and, therefore, only those three accounts were

included in the Discharge. Plaintiff also enclosed again with the Fourth Equifax Dispute Letter copies of the notice of her bankruptcy filing and Discharge to demonstrate the timing of her bankruptcy filing and Discharge.

55.     On November 2, 2020, Equifax received Plaintiff's Fourth Equifax Dispute Letter.

56.     Plaintiff did not receive from Equifax any response to her Fourth Equifax Dispute Letter.

57.     In or around January 2021, Plaintiff obtained from Equifax an updated copy of her credit disclosure, dated January 11, 2021, which revealed that none of the inaccurate information that Plaintiff disputed in her Fourth Equifax Dispute Letter was corrected with respect to the VACU accounts. Instead, the inaccurate and derogatory information that Plaintiff disputed continued to be reported in the trade lines relating to the VACU Credit Card and the VACU Additional Account.

58.     In or around July 2021, Plaintiff obtained from Equifax another updated copy of her credit disclosure, dated July 25, 2021, which confirmed that the inaccurate information regarding the VACU accounts that Plaintiff disputed in her previous dispute letters continued to be reported in the VACU Credit Card and the VACU Additional Account trade lines.

59.     Upon information and belief, Equifax published to third parties multiple inaccurate consumer reports about Plaintiff that contained the inaccurate and derogatory information about the VACU accounts disputed by Plaintiff.

**C.      Inaccurate and Derogatory Information Regarding VACU Accounts Reported on Plaintiff's Experian Credit Reports.**

60.     The 2019 Disclosures revealed that Experian was also reporting inaccurate and derogatory information regarding Plaintiff's accounts with VACU.

61.     First, with respect to the VACU Line of Credit, Experian reported a recent balance owed in the amount of $1,471.

62.     Experian's reporting regarding the VACU Line of Credit was inaccurate because the account was included and discharged in Plaintiff's bankruptcy case.

63.     Second, in addition to incorrectly reporting trade lines that referenced Plaintiff's VACU Line of Credit as indicating a balance was owed, as well as reporting Plaintiff's VACU Auto Loan and VACU Credit Card, each with an accurate status of "Discharged through Bankruptcy Chapter 7", Experian was also inaccurately reporting derogatory information in an additional separate trade line that referred to the Additional VACU Account. Even though the Additional VACU Account was not one of Plaintiff's Three Discharged VACU Accounts, Experian was reporting in the Additional VACU Account trade line a status of "Discharged through Bankruptcy Chapter 7".

64.     Experian's reporting with respect to the Additional VACU Account was inaccurate because Plaintiff only had three accounts with VACU at the time of her bankruptcy filing, and she did not open any accounts with VACU thereafter, so it was not possible for a fourth VACU account to have been discharged in Plaintiff's bankruptcy. Even if the Additional VACU Account trade line was showing duplicate information for one of Plaintiff's Three Discharged VACU Accounts—which were all being reported with a status of "Account Included in Bankruptcy" elsewhere on Plaintiff's credit file—it was misleading and inaccurate to report differing and derogatory information about that one account under two separate trade lines.

65.     On December 16, 2019, Plaintiff sent Experian a letter dated December 13, 2019, via certified mail, to dispute the inaccurate and derogatory information appearing in her credit file (the "First Experian Dispute Letter").

66.     Plaintiff paid to the United States Postal Service the costs associated with mailing the First Experian Dispute Letter via certified mail.

67.     In the First Experian Dispute Letter, Plaintiff disputed the inaccurate information being reported regarding the VACU Line of Credit, asserting that no balance was owed on the account because her liability on the debt was discharged in her bankruptcy case.

68.     At the time she sent the First Experian Dispute Letter, Plaintiff was under the mistaken impression that the Additional VACU Account trade line actually related to one of her Three Discharged VACU Accounts. Thus, Plaintiff did not assert in the First Experian Dispute Letter that the Additional VACU Account was not one of her Three Discharged VACU Accounts. It was not until after Plaintiff sent the First Experian Dispute Letter that she realized the Additional VACU Account was either a duplicate reporting of one of her Three Discharged VACU Accounts or it referred to a VACU account that did not belong to Plaintiff.

69.     On December 20, 2019, Experian received Plaintiff's First Experian Dispute Letter.

70.     In response to the First Experian Dispute Letter, Experian mailed to Plaintiff its reinvestigation results, dated January 2, 2020.

71.     In its January 2, 2020 reinvestigation results, Experian indicated it updated its reporting regarding the VACU Line of Credit by removing the account balance owed, and changing the account status to reflect it was discharged in Plaintiff's bankruptcy.

72.     After updating its reporting of the VACU Line of Credit to reflect a status of "Discharged through Bankruptcy Chapter 7", Experian was inaccurately reporting that Plaintiff had four separate VACU accounts discharged in her bankruptcy case, including Plaintiff's Three Discharged VACU Accounts plus the Additional VACU Account.

73.     On October 30, 2020, Plaintiff sent Experian a second letter, dated October 29, 2020, via certified mail, to dispute the remaining inaccurate and derogatory information appearing in her credit file (the "Second Experian Dispute Letter").

74.     Plaintiff paid to the United States Postal Service the costs associated with mailing the Second Experian Dispute Letter via certified mail.

75.     In the Second Experian Dispute Letter, Plaintiff disputed the inaccurate and derogatory information being reported regarding the Additional VACU Account. Specifically, Plaintiff asserted that, because she only had three accounts with VACU that were discharged in her bankruptcy case, there should not be four VACU accounts being reported as included or discharged in her bankruptcy. Plaintiff also suggested that the VACU Credit Card trade line and the Additional VACU Account trade line both referenced the same account. Plaintiff requested that the trade line referencing the Additional VACU Account be deleted from her credit file.

76.     On November 12, 2020, Experian received Plaintiff's Second Experian Dispute Letter.

77.     In response to the Second Experian Dispute Letter, Experian provided to Plaintiff its reinvestigation results, dated December 2, 2020.

78.     Experian's December 2, 2020 reinvestigation results revealed that the inaccurate information that Plaintiff disputed regarding the Additional VACU Account was not corrected. Instead, the reinvestigation results indicated that VACU "certified to Experian that the [disputed] information is accurate", and, as a result, Experian continued to report on Plaintiff's credit four VACU accounts with a status of "Discharged through Bankruptcy Chapter 7".

79.     On January 29, 2021, Plaintiff sent Experian a third letter, dated January 18, 2021, via certified mail, to dispute again the inaccurate and derogatory information appearing in her credit file (the "Third Experian Dispute Letter").

80.     Plaintiff paid to the United States Postal Service the costs associated with mailing the Third Experian Dispute Letter via certified mail.

81.     In the Third Experian Dispute Letter, Plaintiff again disputed the inaccurate and derogatory information being reported regarding the Additional VACU Account. Specifically, Plaintiff asserted again that, because she only had three accounts with VACU that were discharged in her bankruptcy case, there should not be four VACU accounts being reported as included or discharged in her bankruptcy. Plaintiff also suggested again that the VACU Credit Card trade line and the Additional VACU Account trade line both referenced the same account. Plaintiff requested again that the trade line referencing the Additional VACU Account be deleted from her credit file.

82.     Plaintiff enclosed with the Third Experian Dispute Letter copies of the relevant pages of an Equifax credit report, dated December 26, 2018—only five days prior to the filing of Plaintiff's bankruptcy petition—to demonstrate that only the Three Discharged VACU Accounts were open at the time of her bankruptcy filing, and therefore, only those three accounts were included in the Discharge. Plaintiff also enclosed with the Third Experian Dispute Letter copies of the notice of her bankruptcy filing and Discharge to demonstrate the timing of her bankruptcy filing and Discharge.

83.     On February 9, 2021, Experian received Plaintiff's Third Experian Dispute Letter.

84.     In response to the Third Experian Dispute Letter, Experian provided to Plaintiff its reinvestigation results, dated February 26, 2021.

85.     Experian's February 26, 2021 reinvestigation results revealed that the inaccurate information that Plaintiff disputed with respect to the Additional VACU Account was still not corrected. Instead, the reinvestigation results indicated that VACU "certified to Experian that the [disputed] information is accurate" with respect to both the VACU Credit Card trade line and the Additional VACU Account trade line. As a result, Experian continued to report on Plaintiff's credit four VACU accounts with a status of "Discharged through Bankruptcy Chapter 7".

86.     In or around July 2021, Plaintiff obtained an updated copy of her Experian credit disclosure, dated July 25, 2021, which revealed again that, despite Plaintiff's prior disputes, the same inaccurate and derogatory information that Plaintiff previously disputed regarding the VACU accounts was still being reported on Plaintiff's credit.

87.     Upon information and belief, Experian published to third parties multiple inaccurate consumer reports about Plaintiff that contained the inaccurate and derogatory information disputed by Plaintiff.

**D.     Inaccurate and Derogatory Information Regarding VACU Accounts Reported on Plaintiff's Trans Union Credit Reports.**

88.     The 2019 Disclosures revealed that, in addition to reporting Plaintiff's Three Discharged VACU Accounts, each with a status of "Account Included in Bankruptcy", Trans Union was also inaccurately reporting derogatory information in an additional separate trade line that referred to the Additional VACU Account. Specifically, even though the Additional VACU Account was not one of Plaintiff's Three Discharged VACU Accounts, Trans Union was reporting in the Additional VACU Account trade line a status of "Account Included in Bankruptcy" and remarks of "Chapter 7 Bankruptcy".

89.     Trans Union's reporting with respect to the Additional VACU Account was inaccurate because Plaintiff only had three accounts with VACU at the time of her bankruptcy

filing, and she did not open any accounts with VACU thereafter, so it was not possible for a fourth VACU account to have been discharged in Plaintiff's bankruptcy. Even if the Additional VACU Account trade line was showing duplicate information for one of Plaintiff's Three Discharged VACU Accounts—which were all being reported with a status of "Account Included in Bankruptcy" elsewhere on Plaintiff's credit file—it was misleading and inaccurate to report differing and derogatory information about that one account under two separate trade lines.

90.     On January 21, 2020, Plaintiff sent Trans Union a letter, dated January 21, 2020, via certified mail, to dispute the inaccurate and derogatory information set forth in her credit file (the "First Trans Union Dispute Letter").

91.     Plaintiff paid to the United States Postal Service the costs associated with mailing the First Trans Union Dispute Letter via certified mail.

92.     In the First Trans Union Dispute Letter, Plaintiff disputed the inaccurate and derogatory information being reported regarding the Additional VACU Account. Specifically, Plaintiff asserted that, because she only had three accounts with VACU that were discharged in her bankruptcy case, there should not be four VACU accounts being reported as included or discharged in her bankruptcy. Plaintiff also suggested that the VACU Credit Card trade line and the Additional VACU Account trade line both referenced the same account. Plaintiff requested that one of the VACU derogatory trade lines referencing that account be deleted from her credit file.

93.     On November 4, 2020, Trans Union received Plaintiff's First Trans Union Dispute Letter.

94.     In response to the First Trans Union Dispute Letter, Trans Union provided to Plaintiff its reinvestigation results, dated November 15, 2020.

95. Trans Union's November 15, 2020 reinvestigation results revealed that VACU verified as accurate the information being reported in the trade line that referenced partial account no. 51996003, and updated information not related to Plaintiff's dispute in the trade line that referenced partial account no. 534466000003, but the inaccurate information that Plaintiff disputed with respect to the Additional VACU Account was not corrected, and Trans Union continued to report on Plaintiff's credit four VACU accounts with a status of "Account Included in Bankruptcy".

96. On January 29, 2021, Plaintiff sent Trans Union a second letter, dated January 18, 2021, via certified mail, to dispute again the inaccurate and derogatory information appearing in her credit file (the "Second Trans Union Dispute Letter").

97. Plaintiff paid to the United States Postal Service the costs associated with mailing the Second Trans Union Dispute Letter via certified mail.

98. In the Second Trans Union Dispute Letter, Plaintiff again disputed the inaccurate and derogatory information being reported regarding the Additional VACU Account. Specifically, Plaintiff asserted again that, because she only had three accounts with VACU that were discharged in her bankruptcy case, there should not be four VACU accounts being reported as included or discharged in her bankruptcy. Plaintiff also suggested again that the VACU Credit Card trade line and the Additional VACU Account trade line both referenced the same account. Plaintiff requested again that the trade line referencing the Additional VACU Account be deleted from her credit file.

99. Plaintiff enclosed with the Second Trans Union Dispute Letter copies of the relevant pages of an Equifax credit report, dated December 26, 2018—only five days prior to the filing of Plaintiff's bankruptcy petition—to demonstrate that only the Three Discharged VACU

Accounts were open at the time of her bankruptcy filing, and therefore, only those three accounts were included in the Discharge. Plaintiff also enclosed with the Second Trans Union Dispute Letter copies of the notice of her bankruptcy filing and Discharge to demonstrate the timing of her bankruptcy filing and Discharge.

100.    On April 6, 2021, Trans Union received Plaintiff's Second Trans Union Dispute Letter.

101.    In response to the Second Trans Union Dispute Letter, Trans Union provided to Plaintiff its reinvestigation results, dated April 21, 2021.

102.    Trans Union's April 21, 2021 reinvestigation results did not address or include any reference to the disputed Additional VACU Account or any other VACU accounts.

103.    In or around July 2021, Plaintiff obtained an updated copy of her Trans Union credit disclosure, dated July 25, 2021, which revealed again that, despite Plaintiff's prior disputes, the same inaccurate and derogatory information that Plaintiff previously disputed regarding the Additional VACU Account trade line was still being reported on Plaintiff's credit.

104.    Upon information and belief, Trans Union published to third parties multiple inaccurate consumer reports about Plaintiff that contained the inaccurate and derogatory information disputed by Plaintiff.

**E.    Failure by VACU to Investigate Plaintiff's Disputes.**

105.    In a letter to Plaintiff, dated September 17, 2020, VACU acknowledged Plaintiff's disputes regarding the reporting of the Additional VACU Account on her credit file.

106.    In its September 17, 2020 letter, VACU explained that the Additional VACU Account trade line being reported on Plaintiff's credit relates to an installment loan that VACU

opened when it closed and transferred the VACU Credit Card to collections. This confirms that these two accounts refer to the same debt.

107.    VACU also claimed in its September 17, 2020 letter that, upon receiving any dispute that Plaintiff submitted to any consumer reporting agency regarding the reporting of those account on Plaintiff's credit, VACU would "update any incorrect information at that time". Despite its assertion in its letter, VACU did not correct the incorrect information it was furnishing to Equifax, Experian, or Trans Union after any of Plaintiff's disputes.

108.    Upon information and belief, after receipt of the each of Plaintiff's letters disputing information about her VACU accounts, Equifax, Experian, and Trans Union all forwarded Plaintiff's disputes to VACU.

109.    Upon information and belief, VACU utilized the e-OSCAR automated system ("e-OSCAR") and Automated Consumer Dispute Verification ("ACDV") procedures to process Plaintiff's disputes.

110.    Upon information and belief, despite receiving notice of each of Plaintiff's disputes from Equifax, Experian, and Trans Union, VACU failed and refused to investigate and correct the inaccurate information it was furnishing regarding Plaintiff's VACU accounts.

111.    Over twenty years ago, the Consumer Data Industry Association (the "CDIA") created a standardized, electronic format named "Metro 2," for furnishers of information (like VACU) to use in reporting to the Nationwide Consumer Reporting Agencies (the "CRA's," which include Equifax, Experian, and Trans Union).[1] Furnishers receive training on how to

---

[1] CFPB, KEY DIMENSIONS & PROCESSES IN THE U.S. CREDIT REPORTING SYSTEM (Dec. 2012), *available at* http://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf.

properly implement the Metro 2 standards, which are laid out in the CDIA's Credit Reporting Resource Guide.

112.     According to the standards in the Credit Reporting Resource Guide, upon entry of Plaintiff's Discharge, VACU should have furnished information to the CRA's *only* about those accounts actually included or discharged in bankruptcy, reporting those as "Discharged through BK Chapter 7", and then discontinued reporting the accounts.[2]

113.     VACU was aware of the correct way to furnish to the CRA's information regarding Plaintiff's VACU accounts following the entry of the Discharge in her bankruptcy case.

114.     VACU chose to not furnish information to the CRA's about Plaintiff's VACU accounts in accordance with the standards laid out in the Credit Reporting Resource Guide. Instead, despite receiving notice of multiple disputes from Plaintiff, VACU chose to continue to furnish inaccurate information, indicating that an Additional VACU Account (which was not open at the time of Plaintiff's bankruptcy filing or Discharged in her case) was included, discharged, or otherwise affected by Plaintiff's bankruptcy.

115.     Because VACU furnished to the CRA's inaccurate derogatory information regarding Plaintiff's VACU accounts**,** and then chose not to correct the inaccurate information it was furnishing despite receiving notice of several disputes from Plaintiff, the CRA's continued to report inaccurate and derogatory information regarding these accounts on Plaintiff's credit.

116.     VACU regularly furnishes to CRA's misleading information about consumers similar to the information it furnished regarding Plaintiff's VACU Credit Card and the Additional VACU Account. Specifically, with respect to Plaintiff and numerous other

---

[2] Consumer Data Industry Association, Credit Reporting Resource Guide 6-17 (2016).

consumers, VACU has caused a single VACU credit account that was discharged in bankruptcy to be reported on a consumer's credit report under two separate trade lines, each indicating an account status of discharged. This practice artificially inflates the number of derogatory accounts reported on the credit reports of affected consumers.

117.    In addition to engaging in a pattern and practice of furnishing misleading and derogatory information to the CRA's regarding consumers' discharged credit accounts, on several occasions, VACU also has chosen not to correct the inaccurate information it has furnished, even after it receives from CRA's notices of consumer disputes.

**F.    Recent Publication of Inaccurate Information on Plaintiff's Credit File.**

118.    In May 2020, Plaintiff sought to trade in her current vehicle—a 2018 Mitsubishi Outlander, which she had purchased and financed under unfavorable terms during the pendency of her bankruptcy case—and purchase a different vehicle for her personal use, or, in the alternative, to refinance her current vehicle loan under more favorable loan terms.

119.    On or about May 16, 2020, in connection with her request to finance the purchase of a used vehicle, Plaintiff submitted a credit application to the finance department at Priority Acura, located in Chesapeake, Virginia. In connection with Plaintiff's credit application, Equifax furnished to Priority Acura a consumer report concerning Plaintiff, which contained inaccurate and derogatory information regarding Plaintiff's VACU accounts.

120.    Upon information and belief, in order to further explore finance options that might be available to Plaintiff, Priority Acura's finance department also approached American Honda Finance Corporation regarding Plaintiff's credit application. On or about May 16, 2020, Equifax furnished to American Honda Finance Corporation a consumer report concerning

Plaintiff, which contained inaccurate and derogatory information regarding Plaintiff's VACU accounts.

121.    Upon information and belief, because of derogatory information being reported in her Equifax consumer report, Plaintiff's financing options were limited. Although Plaintiff received an offer to extend credit, the proposed terms of the financing would have required Plaintiff to tender a large down-payment on a vehicle. Therefore, Plaintiff did not accept the proposed loan.

122.    Also on or about May 16, 2020, in connection with her request to finance the purchase of a 2020 Acura MDX, Plaintiff submitted a credit application to the finance department at Priority Hyundai, located in Chesapeake, Virginia. In connection with Plaintiff's credit application, Equifax furnished to Priority Hyundai a consumer report concerning Plaintiff, which contained inaccurate and derogatory information regarding Plaintiff's VACU accounts.

123.    In a letter dated June 5, 2020, Priority Hyundai advised Plaintiff that her credit application was denied. Priority Hyundai confirmed in its June 5, 2020 letter that, as part of its consideration of Plaintiff's credit application, it reviewed the information contained in the consumer report concerning Plaintiff that Equifax furnished on May 16, 2020.

124.    On or about May 28, 2020, Plaintiff submitted a credit application to BayPort Credit Union, seeking approval of a loan to refinance her current vehicle loan. In connection with Plaintiff's credit application, Equifax furnished to BayPort Credit Union a consumer report concerning Plaintiff, which contained inaccurate and derogatory information regarding Plaintiff's VACU accounts.

125.    In an adverse action notice dated May 29, 2020, BayPort Credit Union advised Plaintiff that her credit application was denied, and that the decision to deny her credit

application was based in whole or in part on derogatory information appearing in the consumer report concerning Plaintiff that Equifax furnished to BayPort Credit Union on May 28, 2020.

126.     On or about July 7, 2020, Plaintiff applied for credit with Bank of America. Plaintiff's application was denied. Upon information and belief, Bank of America relied upon information contained in a consumer report provided by Experian in making its decision to deny the extension of credit to Plaintiff.

127.     On or about July 10, 2020, Plaintiff applied for credit, in the form of a Kohl's Card, with Capital One. Plaintiff's application was denied. Upon information and belief, Capital One relied upon information contained in a consumer report provided by Experian in making its decision to deny the extension of credit to Plaintiff.

128.     On or about August 26, 2020, Plaintiff applied for credit with 1st Advantage Federal Credit Union. In connection with Plaintiff's credit application, Equifax furnished to 1st Advantage Federal Credit Union a consumer report concerning Plaintiff, which contained inaccurate and derogatory information regarding Plaintiff's VACU accounts.

129.     In an adverse action notice dated August 26, 2020, 1st Advantage Federal Credit Union advised Plaintiff that her credit application was denied, and that the decision to deny her credit application was based in whole or in part on derogatory information appearing in the consumer report concerning Plaintiff that Equifax furnished to 1st Advantage Federal Credit Union on August 26, 2020.

130.     On or about January 21, 2021, Plaintiff applied for credit with Capital One Bank USA. Upon information and belief, in connection with Plaintiff's credit application, Equifax, Experian, and Trans Union each furnished to Capital One Bank USA a consumer report

concerning Plaintiff, which contained inaccurate and derogatory information regarding Plaintiff's VACU accounts.

131.    On or about June 2, 2021, Plaintiff submitted a credit application to Capital One Auto Finance, seeking approval of a loan to refinance her current vehicle loan. In connection with Plaintiff's credit application, Equifax, Experian, and Trans Union each furnished to Capital One Auto Finance a consumer report concerning Plaintiff, which contained inaccurate and derogatory information regarding Plaintiff's VACU accounts.

132.    Upon information and belief, because of derogatory information still being reported in her Equifax, Experian, and Trans Union consumer reports, Plaintiff's financing options with Capital One Auto Finance were limited. Although Capital One Auto Finance offered to extend credit to Plaintiff, the terms of the loan would have required Plaintiff to repay the amounts borrowed at a high annual percentage rate in excess of 9% over 48 months, which would have also resulted in Plaintiff paying more under the refinanced loan terms than she was paying under the terms of her current loan. Therefore, Plaintiff did not accept the proposed loan terms.

133.    Through its violations of Plaintiff's rights under the FCRA, VACU has caused damage to Plaintiff.

**V.**

**CLAIMS FOR RELIEF**

**COUNT ONE:**
**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681s-2(b)(1)**

134.    Plaintiff realleges and incorporates all other factual allegations set forth in this complaint.

135.    On one or more occasions within the past two years, by example only and without limitation, VACU violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

136.    VACU understood the nature of Plaintiff's disputes when it received them from Equifax, Experian, and Trans Union.

137.     On one or more occasions within the past two years, by example only and without limitation, VACU violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by Equifax,  Experian, and Trans Union regarding Plaintiff's disputes.

138.    On one or more occasions within the past two years, by example only and without limitation, VACU violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b)(1)(E), by failing to modify the representations about VACU accounts within Plaintiff's credit files with Equifax, Experian, and Trans Union to remove references to Plaintiff's bankruptcy from VACU accounts that were not included or affected by Plaintiff's bankruptcy.

139.    The law in this District, the Fourth Circuit, and even nationally was long ago articulated to require a detailed and searching reinvestigation by a creditor when it receives a consumer's FCRA dispute through a CRA. See *Johnson v. MBNA*, 357 F.3d 426 (4th Cir. 2004).

140.    VACU was aware of the *Johnson v. MBNA* FCRA decision by the Fourth Circuit when it followed the ACDV procedures used regarding Plaintiff's disputes.

141.    VACU has been sued numerous times for its alleged failures to conduct lawful FCRA reinvestigations, including its failures to reinvestigate disputes that question a single VACU account being reported in two separate trade lines, each with a status of "discharged in bankruptcy".

142.    Upon information and belief, the procedures that VACU's employee(s) or agent(s) followed regarding Plaintiff's FCRA disputes through e-Oscar were the procedures that VACU intended its employees or agents to follow.

143.    Upon information and belief, VACU's employee(s) or agent(s) did not make a mistake in the way in which they followed VACU's procedures when they received, processed and responded to the respective ACDV's from Equifax, Experian, and Trans Union.

144.    As a result of VACU's violations of 15 U.S.C. § 1681s-2(b)(1), Plaintiff suffered actual damages, including, but not limited to loss of credit, postage costs, travel costs, damage to reputation, embarrassment, humiliation, and other emotional and mental distress.

145.    The violations by VACU were willful, rendering VACU liable for punitive damages in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n. In the alternative, VACU was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

146.    Plaintiff is entitled to recover actual damages, punitive damages, costs, and attorney's fees from VACU in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n and § 1681o.

## VI.

### DEMAND FOR RELIEF

Plaintiff therefore respectfully requests that this Court:

(1)     Award Plaintiff actual and punitive damages for violations of the FCRA by

VACU;

(2)     Award Plaintiff attorney's fees and costs under the FCRA;

(3)     Award Plaintiff pre-judgment and post-judgment interest at the legal rate; and

(4)     Award other relief as the Court deems appropriate.

**TRIAL BY JURY IS DEMANDED.**


**CECELIA RENA HILL**

By:

/s/ Emily Connor Kennedy
Emily Connor Kennedy, VSB# 83889
Mark C. Leffler, VSB# 40712
Stephen F. Relyea, VSB# 77236
Boleman Law Firm, P.C.
2104 W. Laburnum Ave, Suite 201
Richmond, VA 23227
(804) 358-9900 – Telephone
(804) 358-8704 – Facsimile
Email: eckennedy@bolemanlaw.com
Email: mcleffler@bolemanlaw.com
Email: sfrelyea@bolemanlaw.com

*Counsel for Plaintiff*